**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN MICHIGAN**

INNA BEIM,

    Plaintiff,

v.

    Case No.

    Hon.

HENRY FORD HEALTH SYSTEM,

    Defendant.

---

Batey Law Firm, PLLC
SCOTT P. BATEY (P54711)
RYAN T. FOWLER (P84210)
Attorneys for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, Michigan 48025
(248) 540-6800-telephone
(248) 540-6814-fax
sbatey@bateylaw.com
rfowler@bateylaw.com

---

## COMPLAINT AND JURY DEMAND

NOW COMES, Plaintiff, Inna Beim (hereinafter "Plaintiff"), by and through her attorneys, Scott P. Batey and the Batey Law Firm, PLLC, and for her Complaint against Defendant states as follows:

1. Plaintiff is a resident of the City of West Bloomfield, County of Oakland and State of Michigan.

1

2. Defendant, Henry Ford Health Services (hereinafter "HFHS") is a domestic non-profit health care corporation whose resident agent is Michelle Johnson Tidjani, and whose registered office address is HFHS Governance Office, One Ford Place 5B, Detroit, Michigan, 48202 and who is duly authorized to do business in the County of Oakland and State of Michigan.

3. The events producing the original injuring occurred in the County of Oakland, State of Michigan and jurisdiction and venue are proper in the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) & (c).

4. Plaintiff brings this action for damages stemming from the acts and/or omissions of Defendant constituting harassment, discrimination and adverse employment action which resulted in both economic and emotional damages to Plaintiff in violation of the Americans with Disabilities Act ("ADA").

5. The amount in controversy exceeds $75,000.00 and is otherwise within the Jurisdiction of this Court.

## **GENERAL ALLEGATIONS**

6. Plaintiff incorporates by reference paragraphs 1 through 5 of the Complaint as though fully set therein.

7. Plaintiff, Inna Beim, began her employment with Defendant HFHS on or about September 9, 2016 as a Clinical Quality Facilitator 1.

8. In or around February 2017, Plaintiff became disabled due to cervical herniated disks that substantially interfered with her ability to walk, stand, sit, and use her left arm.

9. In January 2019, Plaintiff had surgery to alleviate the symptoms from the cervical herniated disks and was on medical leave from January 31, 2019 to April 21, 2019.

10. On or about March 15, 2019, while still out on medical leave, Plaintiff provided both her immediate supervisor, Emily Nerreter, and Cigna, the health services organization, with a request for reasonable accommodations and included all necessary medical documentation.

11. On March 29, 2019, Plaintiff informed Ms. Nerreter that she was cleared to return to work on April 22, 2019 and requested that her accommodations be in place so she could start working immediately upon her return.

12. On April 19, 2019, a caseworker for Cigna contacted Plaintiff and informed her that Ms. Nerreter had just approved the accommodation request, and the accommodations would not arrive in time for Plaintiff's return to work on April 22.

13. Immediately thereafter, Plaintiff contacted Ms. Nerreter and requested to work from home on April 22, 2019 since her accommodations were not in place.

14. When Plaintiff returned to work on April 23, 2019, she found that her standing desk was unassembled and while maintenance eventually assembled the desk, the monitor mount was too high and caused Plaintiff severe pain.

15. Despite requesting that maintenance lower the mount, maintenance personnel refused.

16. Plaintiffs accommodation also included a headset to use while on the phone, which was not delivered to her desk until several days after her return.

17. When Plaintiff finally did receive the headset, it was uninstalled, and she was unable to set it up on her own due being in a brace and having bending restrictions.

18. Ms. Nerreter indicated that a coworker would come assist Plaintiff with the setup and would take pictures of Plaintiff's workstation.

19. However, the coworker expressed that she was not comfortable taking pictures of the workstation and was concerned about ADA compliance.

20. In an attempt to get her headset installed, Plaintiff contacted Defendant's IT department, maintenance workers, and her fellow coworkers but was still unable to get assistance.

21. As a result of Defendant's lack of response and assistance, Plaintiff's husband ultimately had to come set up the headset.

22. Plaintiff's workstation chair did not provide adequate neck support and due to Plaintiff's disability, the chair caused Plaintiff immense pain.

23. Plaintiff contacted Karen Sparks, Director of Quality in West Bloomfield, and was told to contact Ms. Nerreter to obtain a better chair.

24. Kelton Winnega was sent to take photos of Plaintiff's current chair, informed Plaintiff that it was his responsibility to ensure that all accommodation requests are in place so employees can safely preform their job duties, and promised Plaintiff that he would email Ms. Nerreter regarding the chair.

25. While on a call with Mr. Winnega and Ms. Nerreter, Plaintiff was told that her doctor needed to submit an order for a new chair.

26. Plaintiff's doctor promptly sent an order to Cigna for a new chair.

27. After submitting the request and doctor's order for a new chair, Ms. Nerreter began to harass and discriminate against Plaintiff due to her disability and accommodation requests.

28. Despite having previously told Plaintiff that she could attend weekly meetings via Skype, Ms. Nerreter retaliated against Plaintiff's accommodation requests by requiring her to drive to Detroit for the meetings, even though she knew this would be extremely difficult and painful due to Plaintiff's disability.

29. Ms. Nerreter also knowingly disseminated and disclosed Plaintiff's FMLA ID and Short-Term Disability ID to individuals who were not involved in Plaintiff's accommodation requests.

30. On April 19, 2019, Ms. Nerreter brought Plaintiff into an empty office and informed her that if she still wished to receive the chair accommodation, Plaintiff would be required to go back on medical leave.

31. During that same meeting, Ms. Nerreter was condescending, rude, and refused to provide any details regarding why Plaintiff would be required to go back on medical leave.

32. From that point, Ms. Nerreter continued to belittle Plaintiff, mocked her accent, and retaliated against her in response to requests for reasonable accommodations.

33. While in the office, Lisa Carlisle and Ms. Nerreter questioned the judgment of Plaintiff's doctor and openly discussed whether Plaintiff was "too fragile" to be back at work.

34. On April 30, 2019, Plaintiff met with Coleen Savage to discuss her concerns about her accommodations and the harassment she was enduring.

35. Ms. Savage informed Plaintiff that she should just be grateful to be back at work and any perceived harassment was based on mere "cultural differences."

6

36. Still looking to stop the harassment and have her disability properly accommodated, Plaintiff contacted Ms. Sparks on May 2, 2019.

37. Ms. Sparks was sympathetic to Plaintiff's situation, and recommended that Plaintiff report the situation to Human Resources.

38. That same day, Ms. Savage called Plaintiff and stated "you must stop talking about this, otherwise I will have to write you up."

39. When Plaintiff questioned what she would be written up for, Ms. Savage simply stated, "if you are not happy with your job, you are welcome to look for something else."

40. Plaintiff understood this statement as a threat that she would lose her job if she continued to seek reasonable accommodations for her disability.

41. On May 14, 2019, Plaintiff submitted a resignation letter due to the ongoing harassment and hostility that stemmed from her requests for accommodations.

42. Although Plaintiff's last day was scheduled to be May 31, 2019, Plaintiff returned to work on May 21, 2019 to find that she was locked out of her computer and was instructed to not come back to work.

43. Defendant treated Plaintiff as though she was terminated, and she was told that she is not welcome on HFHS property unless it was for medical reasons.

44. Defendant prohibited Plaintiff from entering the premises to pick up her personal belongings, and when plaintiff finally regained possession of her property, she discovered that an heirloom sweater made for her by her grandmother was destroyed.

45. While employed by Defendant, Plaintiff was never made aware of any performance issues, and was never reprimanded or disciplined.

46. Prior to making accommodation requests, Plaintiff was well liked, had a good working relationship with her supervisors and coworkers, and enjoyed her work.

47. The requested accommodations were reasonable and easy for Defendant to provide to Plaintiff.

48. During the time period in question, Defendant HFHS was Plaintiff's employer and Plaintiff was its employee within the meaning of the ADA.

49. Defendant's actions were intentional, or were carried out with reckless indifference to Plaintiff's rights and reasonable requests for accommodation.

## COUNT I
## VIOLATION OF AMERICAN WITH DISABILITIES ACT OF 1990

50. Plaintiff incorporates by reference Paragraphs 1 through 49 above as though more fully set forth herein.

51. Plaintiff suffers from cervical herniated disks which is a disability under the Americans with Disabilities Act of 1990 ("ADA") and substantially

interferes with major life activities, including her ability to sit, stand, and use her left arm.

52. Pursuant to the ADA, Plaintiff is guaranteed the right to be free from discriminatory treatment and/or discharge from her employment by her employer and/or supervisors based upon her disability, as well as the right to receive reasonable accommodation assisting in performing her job.

53. Plaintiff was able to perform the essential functions of her job with or without a reasonable accommodation.

54. Defendant refused to provide Plaintiff a reasonable accommodation by bullying and harassing her after she tried to request the accommodation.

55. Plaintiff's disability was a factor in Defendant's employment decisions, including, but not limited to, harassing her, refusing to accommodate her, and effectively discharging her by forcing her to resign.

56. Defendant is an employer within the meaning of the ADA.

57. Plaintiff has been subjected to continuous discriminatory treatment based upon her disability by Defendant, its employees and agents to the point where her status as an employee was detrimentally affected and she was refused reasonable accommodations by Defendant.

58. Plaintiff is entitled to exemplary, compensatory and punitive damages pursuant to the ADA as a result of each and every violation of the act, including costs and reasonable attorney's fees.

59. Defendant and its agents, employees and representatives, by reason of the following acts and/or omissions:

    a. Violated the laws against discrimination by terminating Plaintiff based exclusively upon her disability;

    b. Failed to refrain from imposing discipline based on Plaintiff's disability;

    c. Failed to take serious and corrective action when informed by Plaintiff that the conduct towards her was unlawful; and

    d. Prevented Plaintiff from having full and fair opportunities to advance in his position based upon her disability.

60. Defendant HFHS owed Plaintiff, a disabled employee, a duty to adequately advise their employees to refrain from discriminating against employees.

61. As a direct and proximate result of Defendant's harassment and discrimination of Plaintiff solely on the basis that she had a disability or was perceived by Defendant to be a person with a disability, Plaintiff has sustained injuries including, but not limited to:

    a. Economic damages;

    b. Wage loss;

    c. Mental anguish;

    d. Fright;

    e. Shock;

    f. Embarrassment;

    g. Outrage;

    h. Anxiety;

    i. Emotional distress;

    j. Loss of self-esteem; and

    k. Loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully requests judgment in his favor and against Defendant in an amount in excess of $75,000.00, plus exemplary damages, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate.

## **COUNT II**
## **RETALIATION**

62. Plaintiff incorporates by reference paragraphs 1 through 61 of the Complaint as though fully set forth herein.

63. Defendant is an "employer" as defined in the ADA.

64. Plaintiff engaged in a protected activity by requesting a reasonable accommodation as she was seeking to enforce her statutory rights to be free from discrimination and retaliation in the workplace due to her disability.

11

65. Defendant knew that Plaintiff was engaging in a protected activity.

66. As a direct result of Plaintiff engaging in the above-referenced protected activity, Defendant has retaliated against Plaintiff.

67. Plaintiff's complaints of harassment and discrimination were a significant factor in Defendant's retaliating against her, and creating a hostile work environment.

68. Because of the unlawful conduct of Defendant, and as a proximate result of such conduct, Plaintiff has suffered damages, including humiliation, embarrassment, outrage, mental anguish and anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits, and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendant in an amount in excess of $75,000.00, plus exemplary damages, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate.

Respectfully submitted,

**BATEY LAW FIRM, P.L.L.C.**

BY: /s/Scott P. Batey
SCOTT P. BATEY (P54711)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, MI 48025
(248) 540-6800
sbatey@bateylaw.com

Dated: November 16, 2020

## DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, Inna Beim, by and through her attorneys, Scott P. Batey and the Batey Law Firm, PLLC, and hereby demands a trial by jury on all issued allowed by law.

Respectfully submitted,

**BATEY LAW FIRM, P.L.L.C.**

BY: /s/Scott P. Batey
SCOTT P. BATEY (P54711)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, MI 48025
(248) 540-6800
sbatey@bateylaw.com

Dated: November 16, 2020